CHERYL C. ROUSE (State Bar No. 118313)
NORMAN P. BAHLERT (State Bar No. 135693)
LAW OFFICES OF ROUSE & BAHLERT
1246 18th Street
San Francisco, CA 94107
Mailing Address:
1459 18th Street, #104
San Francisco, CA 94107
(415) 575-9444 Tel
rblaw@ix.netcom.com

Attorneys for Plaintiff
Ramona Featherby, dba California
Judicial Recovery

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| | |
|---|---|
| IN RE: | Case No.: 2:24-bk-12882-WB |
| | Chapter 13 |
| SERJ SOUKAZ MARKARIAN, | |
| Debtor | |
| _____ | |
| | Adv.Pro.No. |
| RAMONA FEATHERBY, DBA | |
| CALIFORNIA JUDICIAL RECOVERY, | **COMPLAINT TO DETERMINE THE NONDISCHARGEABLITY OF DEBT UNDER 11 U.S.C. §523 (a)(2)(A) and §523(a)(2)(B)** |
| Plaintiff, | |
| v. | |
| SERJ SOUKAZ MARKARIAN, | |
| Defendant. | |
| _____ | |

Plaintiff Ramona Featherby, dba California Judicial Recovery, hereby files this Complaint and alleges as follows:

**I.    JURISDICTION AND VENUE**

1.    The Debtor filed his Voluntary Petition under Chapter 13 of the United States Bankruptcy Code in the hereinabove Court on or about April 14, 2024.

2.    This court has jurisdiction over this adversary proceeding under the provisions of Title 28 U.S.C. §§157 and 1334. This adversary proceeding is brought

Complaint for Nondischargeability of Debt    1

pursuant to 11 U.S.C. §§523(a)(2)(A) and 523(a)(2)(B) and Bankruptcy Rule 7001.

3.     The claims for relief set forth herein are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(I) and (J).

4.     This adversary proceeding relates to the case of In re Serj Soukaz Markarian, Case No. 2:24-bk-12882-WB, Chapter 13, pending in the United States Bankruptcy Court for the Central District of California, Los Angeles Division.  Pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure, Plaintiff consents to entry of a final order or judgment by the Bankruptcy Court.

5.     Venue is proper pursuant to 28 U.S.C. § 1409.

## II.     PARTIES

6.     Plaintiff is the assignee of the judgment entered against the Debtor and in favor of Maung Ye Htut Loo ("Loo") in the Superior Court of the state of California, county of Los Angeles, in the case of *GLENOAKS RX, INC. et al. v.  MAUNG YE HTUT LOO and the related cross-complaint of MAUNG YE HTUT LOO v. SERJ SOUKAZ MARKARIAN, et al.*, Case No. BC 721863 (the "State Court Case"). Judgment was filed on July 16, 2021 and a Revised Judgment was filed on February 1, 2022.  An Acknowledgment of Assignment of Judgment, pursuant to CCP §673, was filed on August 30, 2023.  Said Assignment assigned all right, title and interest in the Judgment to Plaintiff from Loo.  The amended amount of the Judgment was $388,054.49.

7.     Defendant Serj Soukaz Markarian is the debtor herein (hereinafter "Markarian" or "Defendant").

## III.     ALLEGATIONS COMMON TO ALL CLAIMS

8.     On November 19, 2018, Loo filed a Cross-Complaint in the State Court Case against the Defendant, which alleged nine causes of action, including Fraud. Attached hereto as Exhibit "1" is a true and correct copy of said Cross-Complaint.

9.     As alleged in the Cross-Complaint, on or around November 22, 2017,  Loo and Markarian entered into a Stock Transfer Agreement ("Agreement") wherein Markarian would sell and Loo would purchase a 49% interest in Glenoaks Rx, Inc. dba Verdugo Care

Complaint for Nondischargeability of Debt     2

Pharmacy PHY 54451 ("Pharmacy") for a total sum of $315,000. The Agreement is attached as Exhibit "A" to the Cross-Complaint.

10.     The payment terms were as follows: $5,000 upon opening of the escrow for this transaction; $150,000 upon approval by the State Board of Pharmacy of the change of permit request; $160,000 via a Promissory Note to be paid a year after the Board of Pharmacy approval.

11.     In the Agreement, Markarian also expressly agreed to payoff the business line of credit and any other business-related debts on or before January 1, 2018.

12.     Despite this payoff provision in the Agreement, Markarian failed to pay off any business debts until May of 2018 when Loo paid the $150,000 installment towards the purchase price of the Pharmacy.

13.     Prior to signing the Agreement, Markarian falsely represented to Loo that the Pharmacy was a legitimate business.  In addition to this representation, Markarian provided to Loo for review various financial documents reflecting the Pharmacy's past financial history and earnings.

14.     Loo and Markarian also executed a partnership and operation agreement entitled Verdugo Care Pharmacy Operating Agreement ("Operating Agreement"). The Operating Agreement is attached as Exhibit "B" to Cross-Complaint.

15.      In the Operating Agreement, Loo agreed to act as a Pharmacist in Charge ("PIC") for the Pharmacy. Markarian used to hold a pharmacist license, but was forced to surrender it due to some issues with the State Board of Pharmacy a number years prior to entering into the Agreement.

16.     The Operating Agreement also states that Loo shall have 100% authority in managing the Pharmacy.  Despite the above described language in the Operating Agreement, Markarian refused to give Loo any authority in dealing with most financial matters. Markarian and his sister, Arevik Soukazian (employed as a billing technician), were in charge of the pharmacy billings and Markarian would often pay various bills without Loo's knowledge or consent.

Complaint for Nondischargeability of Debt     3

17.    In addition, under the Operating Agreement, the net profit of the Pharmacy was to be distributed to the partners equally.

18.    Approximately nine months after the date of the transaction, in or around August 2018, Medi-Cal conducted a routine audit of the Pharmacy and its practices. Although, as a PIC, Loo should have been in charge of assisting the auditor, Markarian would not allow him to be involved in the audit.  Markarian, together with his attorney, manipulated the data before sending to Medi-Cal.

19.    Loo found it suspicious that Markarian would not allow him to be involved with the audit and began looking into various billings himself. Loo discovered that Markarian, together with Soukazian, engaged in various fraudulent billing practices, such as dispensing generic medications while billing for brand names, billing for medications that were never dispensed, giving kickback payments to various boarding care facilities, and re-selling medications, which have been returned.   Alfred Cheraghi who also worked at the Pharmacy as a technician confirmed Loo's suspicions.  These fraudulent billing practices predated the purchase transaction with Loo.

20.    When Loo learned about the fraudulent billing practices he confronted Markarian, who got very angry and insisted that Loo continue to work as a PIC and not disclose this information to anyone.

21.    Loo feared for his physical safety and also had an affirmative duty as a pharmacist to disassociate himself from a Pharmacy that had been committing fraud for years.

22.    Given Markarian's past history, Loo was concerned Markarian was going to withdraw all the money in the Pharmacy business account and take it for personal use. Given this concern, Loo withdrew $137,500 to be able to cover the immediate liabilities of the Pharmacy and to make sure that they would get paid. Loo thereafter paid to one of the medication vendors HD Smith $92,308.57.

23.    Loo retained the balance of the funds for the benefit of Medi-Cal to reimburse them for the fraudulent transactions once the audit was complete.

Complaint for Nondischargeability of Debt       4

24.     Markarian did not attempt to continue the operations of the Pharmacy when Loo resigned. Even though a pharmacy can operate without a PIC for 30 days and the Pharmacy has enough funds to cover immediate expenses, Markarian did not take any steps to continue the operations of the business. Markarian terminated operations of the business so as to destroy evidence of fraud and incur damages as a basis to file the  lawsuit against Loo, which commenced the State Court Case.

25.     Loo  notified both the California State Board of Pharmacy and Medi-Cal about the fraud that he had discovered.

26.     The trial in the State Court Case was held on June 15, 2021.  On June 18, 2021, the trial court found for Loo and against Markarian on all causes of action in Markarian's complaint.   On the Cross-Complaint, the court ruled in favor of Loo on the causes of action for Fraud, Breach of Fiduciary Duty and Breach of the Covenant of Good Faith and Fair Dealing, with the remaining claims in favor of Markarian. The trial court further found, by clear and convincing evidence, that Markarian acted with malice, fraud and/or oppression when he committed fraud and breach of fiduciary duty.

27.     On July 16, 2021, Judgment was entered in favor of Loo as follows:

a.     The Stock Transfer Agreement was rescinded and Markarian was ordered to refund the sum of $155,000, less an offset of $45,177.49 for the funds that Loo was holding, for a net payment of $109,822.51.

b.     Punitive damages in the amount of $10,000 were awarded to Loo.

c.     Costs and Attorneys fees (to be determined by motion) were awarded to Loo. (A true and correct copy of said Judgment, filed July 16, 2021, is attached hereto as Exhibit "2")

28.     On February 1, 2022, after the hearing on the motion for attorney's fees, a Revised Judgment was entered.  Attached hereto as Exhibit "3" is a true and correct copy of the Revised Judgment.  Per the Revised Judgment, costs in the amount of $38,231.98 and attorneys fees in the amount of $230,000, were awarded to Loo.  The total amount of the judgment was $388,054.49.  The judgment was not appealed and is final.

Complaint for Nondischargeability of Debt       5

## IV.
## FIRST CLAIM FOR RELIEF
## (FOR THE DETERMINATION OF NONDISCHARGEABLITY
## OF DEBT UNDER 11 U.S.C. §523 (a) (2)(A) FOR FRAUD
## AND/OR OBTAINING MONEY UNDER FALSE PRETENSES)

29.     Plaintiff hereby incorporates and realleges each and every allegation set forth in paragraphs 1 through 28, inclusive, of this Complaint, as if each of those allegations were fully restated and set forth hereinbelow.

30.     When Defendant made the representations alleged herein that the Pharmacy was a legitimate business and that the billing records reflected legitimate billing transactions, he knew them to be false and made these representations with the intention to induce Loo, Plaintiff's predecessor in interest,  to act in reliance on these representations in the manner hereafter alleged, or with the expectation that Loo would so act.

31.     Loo, at the time these representations were made by Defendant and at the time Loo took the actions herein alleged, was ignorant of the falsity of Defendant's representations and believed them to be true.  In reliance on these representations, Loo was induced to enter into the Stock Transfer Agreement and the Verdugo Care Pharmacy Operating Agreement, and pay the sum of $155,000.

32.     Had Loo known the actual facts, he would not have taken such action.  Loo's reliance on Defendant's representations was justified because Defendant represented the Pharmacy to be a legitimate business and provided Loo with the Pharmacy's billing records to review.

33.     As a direct result of the acts of Defendant alleged herein, Plaintiff has been damaged in the amount of $388,054.49 for the purchase of the stock, together the award of punitive damages, attorneys fees and costs, and with interest therein.

34.     Defendant directly benefitted from his fraudulent conduct in that he received the sums set forth above.

WHEREFORE, Plaintiff prays for judgment against the Defendant under 11 U.S.C. §523(a)(2)(A).

Complaint for Nondischargeability of Debt      6

## V.

## SECOND CLAIM FOR RELIEF
## (FOR THE DETERMINATION OF NONDISCHARGEABILITY
## OF DEBT UNDER 11 U.S.C. §523 11 U.S.C. §523 (a) (2)(B) FOR FALSE
## FINANCIAL STATEMENT)

35.    Plaintiff hereby incorporates and realleges each and every allegation set forth in paragraphs 1 through 34, inclusive, of this Complaint, as if each of those allegations were fully restated and set forth hereinbelow.

35.    Defendant, by providing Loo with written billing records and other written financial records of the Pharmacy, provided Loo with written representations of fact concerning the Pharmacy's financial condition.

36.    The representations were materially false in that the majority of the transactions  resulted from fraudulent billing practices with respect to Medi-Cal.

37.    Defendant made the representations with the intention of deceiving Loo.

38.    Loo reasonably relied on the representations in that the business was an ongoing operation and Loo had no reason to believe that Defendant's billing practices were fraudulent.

39.    Defendant obtained the $155,000 purchase price as result of the use of the false financial statements and billing records. Therefore, the damages suffered by Loo, Plaintiff's predecessor in interest were proximately caused by the representations.

WHEREFORE, Plaintiff prays for judgment against the Defendant under 11 U.S.C. §523(a)(2)(B).

WHEREFORE, Plaintiff prays for judgment against Defendant as hereinafter set forth:

On the First Claim for Relief Under 11 U.S.C. §523(a)(2)(A), as follows:

1    For determination that the Judgment and the Revised Judgment entered against defendant on July 16, 2021 and February 1, 2022, respectively, in the amount of $388,054.49, together with post-judgment interest at the rate of 10% per annum pursuant

Complaint for Nondischargeability of Debt       7

to California law, is nondischargeable under 11 U.S.C. §523(a)(2)(A);

2.      Or in the alternative, for judgment against defendant and in favor of plaintiff, and that the judgment is nondischargeable under 11 U.S.C. §523(a)(2)(A);

3.      For an award of attorneys fees and costs; and

4.      For such other and further relief as the Court deems just and proper.

Alternatively, on the Second Claim for Relief Under 11 U.S.C. §523(a)(2)(B), as follows:

1      For determination that the Judgment and the Revised Judgment entered against defendant on July 16, 2021 and February 1, 2022, respectively, in the amount of $388,054.49, together with post-judgment interest at the rate of 10% per annum pursuant to California law, is nondischargeable under 11 U.S.C. §523(a)(2)(B);

2.      Or in the alternative, for judgment against defendant and in favor of plaintiff, and that the judgment is nondischargeable under 11 U.S.C. §523(a)(2)(B);

3.      For an award of attorneys fees and costs; and

4.      For such other and further relief as the Court deems just and proper.

Respectfully submitted,

Dated:   October 16, 2024          LAW OFFICES OF ROUSE & BAHLERT

BY:    /s/ Cheryl C. Rouse
         CHERYL C. ROUSE
Attorneys for Ramona Featherby, dba California Judicial Recovery

Complaint for Nondischargeability of Debt      8