# EXHIBIT "1"

**SHENON LAW GROUP**
15165 Ventura Blvd., Suite 200
Sherman Oaks, CA 91403
Email: nshenon@shenonlaw.com
Telephone: 818-646-9109
Fax: 818-358-3148

NATELA SHENON (SBN 261115)
ARMAN MATEVOSYAN (SBN 293832)

Attorneys for Defendant MAUNG YE HTUT LOO
aka MAUNG YE HTUT aka BRIAN LOO

FILED
Superior Court of California
County of Los Angeles

NOV 19 2018

Sherri R. Carter, executive Officer/Clerk of Court
By_____, Deputy
Judi Lara

## THE SUPERIOR COURT OF CALIFORNIA

## COUNTY OF LOS ANGELES - CENTRAL DISTRICT

| | |
|---|---|
| GLENOAKS RX, INC. dba VERDUGO CARE PHARMACY PHY 54451 SERJ SOUKAZ MARKARIAN, <br><br> Plaintiffs, <br><br> vs. <br><br> MAUNG YE HTUT LOO aka MAUNG YE HTUT aka BRIAN LOO; and DOES 1 through 10, inclusive, <br><br> Defendants. | Case No.:  BC721862 <br><br> Assigned for All Purposes to the Honorable Judge Michael P. Linfield <br><br> Dept: 34 <br><br> **CROSS-COMPLAINANT, MAUNG YE HTUT LOO'S CROSS-COMPLAINT FOR:** <br><br> **1. FRAUD** <br> **2. CONSPIRACY TO COMMIT FRAUD** <br> **3. BREACH OF OPERATING AGREEMENT** <br> **4. TRADE LIBEL** <br> **5. BREACH OF FIDUCIARY DUTY** |
| MAUNG YE HTUT LOO, an individual; <br><br> Cross-Complainant; <br><br> vs. <br><br> SERJ SOUKAZ MARKARIAN, an individual; AREVIK SOUKAZIAN, an individual; and ROES 1 through 10, inclusive. <br><br> Cross-Defendants. | **6. BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING** <br> **7. VIOLATION OF BUSINESS AND PROFESSIONS CODE SECTION 17200 et. seq.** <br> **8. DECLARATORY RELIEF** <br> **9. BREACH OF EXPRESS WARRANTY** <br><br> Action Filed:  09/17/2018 <br> Trial Date:  None set. |

# Exhibit "1"

- 1 -

CROSS-COMPLAINT

COMES NOW Cross-Complainant, Maung Ye Htut Loo alleges against Cross-Defendants Serj Soukaz Markarian, and Arevik Soukazian as follows:

## THE PARTIES

1. Cross-Complainant, Maung Ye Htut Loo ("Loo") is an individual and at all times relevant hereto has resided in the State of California, County of Los Angeles.

2. Cross-Defendant, Serj Soukaz Markarian ("Markarian") is an individual and at all times relevant hereto has resided in the State of California, County of Los Angeles.

3. Cross-Defendant, Arevik Soukazian ("Soukazian") is an individual and at all times relevant hereto has resided in the State of California, County of Los Angeles.

4. Glenoaks Rx, Inc. dba Verdugo Care Pharmacy PHY 54451 ("Pharmacy") is a California Corporation and at all times relevant hereto has been and is doing business in the State of California, County of Los Angeles.

5. Loo holds a 49% interest in the Pharmacy.

6. Markarian holds a 51% interest in the Pharmacy. Markarian used to hold a pharmacist license, but was forced to surrender it due to some issues with the California State Board of Pharmacy, several years ago.

7. Soukazian and Markarian are brother and sister. Soukazian has been employed by the Pharmacy as a billing technician at all times relevant hereto.

8. Cross-Complainant does not know the true names or capacities of cross-defendants sued herein as Roes 1 through 10, inclusive, and therefore sues said cross-defendants by such fictitious names.

9. Cross-Complainant is informed and believes and thereon alleges that at all times relevant hereto, Markarian, Soukazian, and Roes 1 through 10, inclusive, were acting as the agents and/or employees of each remaining Cross-Defendants and acting within the course and scope of said agency and/or employment, and that each of the fictitiously named Cross-Defendants is responsible in some manner for the occurrences herein alleged, and that Cross-Complainant's damages were proximately caused by such Cross-Defendants, and each of them.

- 2 -
CROSS-COMPLAINT

## <u>GENERAL ALLEGATIONS</u>

10. On or around November 22, 2017 Loo and Markarian entered into a Stock Transfer Agreement ("Agreement") wherein Markarian would sell and Loo would purchase a 49% interest in the Pharmacy for a total sum of $315,000. The Agreement is attached hereto as Exhibit "A".

11. The payment terms were as follows: $5,000 upon opening of the escrow for this transaction; $150,000 upon approval by the California State Board of Pharmacy of the change of permit request: $160,000 via a Promissory Note to be paid a year after the Board of Pharmacy approval.

12. In the Agreement Markarian also expressly agreed to payoff the business line of credit and any other business-related debts on or before January 1, 2018.

13. Despite this payoff provision in the Agreement, Markarian failed to pay off any business debts until May of 2018 when Loo paid the $150,000 installment towards the purchase price of the Pharmacy.

14. The Agreement contained an express indemnity provision which read as follows: "Transferor shall defend and hold Transferee harmless from and against and in respect of all claims, demands, losses, costs, expenses, obligations, liabilities, damages, recoveries and deficiencies, including interest, penalties and reasonable attorney's fees ("damages") that he shall incur or suffer which arise from, or relate to the operation of the Business prior to January 1, 2018 or from any material breach, or failure by Transferor to perform any of Transferor's covenants or agreements in this Agreement, or if any of the representations and warranties in this Agreement or in any schedule, certificate, exhibit, or other instrument furnished or to be furnished to Transferee under this Agreement is false."

15. Prior to signing the Agreement Loo reviewed various financial documents reflecting the Pharmacy's past financial history and earnings furnished to him by Markarian.

16. Together with the Agreement, Loo and Markarian also executed a Verdugo Care Pharmacy Operating Agreement ("Operating Agreement"). The Operating Agreement is attached hereto as Exhibit "B".

17. In the Operating Agreement Loo agreed to act as Pharmacist in Charge ("PIC") for the Pharmacy.

- 3 -

CROSS-COMPLAINT

18. The Operating Agreement also states that Loo shall have 100% authority in managing the Pharmacy and is appointed as a Chief Financial Officer.

19. Despite the above described language in the Operating Agreement, Markarian refused to give Loo any authority in dealing with most financial matters. Markarian and Soukazian would be in charge of the pharmacy billings and Markarian would often pay various bills without Loo's knowledge or consent.

20. In or around August 2018 Medi-Cal conducted a routine audit of the Pharmacy and its practices. Although, as a PIC, Loo should have been in charge of assisting the auditor, Markarian would not allow him to be involved in the audit. Upon information and belief, Markarian, together with his attorney Luis Andre Parreno Vizcocho, manipulated the data before sending to Medi-Cal.

21. Loo found it suspicious that Markarian would not allow him to be involved with the audit and began looking into various billings himself. Upon information and belief, Markarian, together with his sister Soukazian, engaged in various fraudulent billing practices, such as dispensing generic medications while billing for brand names, billing for medications that were never dispensed, giving kickback payments to various boarding care facilities, and reselling medications which had been returned to the Pharmacy. Photographs taken from the Pharmacy security camera show Markarian accepting returned medications from a boarding care facility and are attached hereto as Exhibit "C".

22. Alfred Cheraghi who also worked at the Pharmacy as a technician confirmed Loo's suspicions. Cheraghi's declaration is attached hereto as Exhibit "D".

23. When Loo learned about the fraudulent billing practices he confronted Markarian, who expressed anger and insisted that Loo continue to work as a PIC and not disclosure this information to anyone.

24. Loo feared for his physical safety and also had an affirmative duty as a pharmacist to disassociate himself from a Pharmacy that had evidently been committing fraud for years.

25. Given Markarian's past history Loo was concerned Markarian was going to withdraw all the money in the Pharmacy business account and take it for personal use.

26. Given this concern, Loo withdrew $137,500 to be able to cover the immediate

- 4 -

liabilities of the Pharmacy and to make sure that they would get paid. Loo has since paid to one of the medication vendors H.D. Smith $92,308.57. Proof of payment by Loo to H.D. Smith is attached hereto as Exhibit "E".

27. Loo is holding on to the balance of the funds for the benefit of Medi-Cal to reimburse them for the fraudulent transactions pending completion of the audit.

28. Upon information and belief, Markarian did not attempt to continue the operations of the Pharmacy when Loo resigned. Even though a pharmacy can operate without a PIC for 30 days and the Pharmacy has enough funds to cover immediate expenses, Markarian did not take any steps to continue the operations of the business.

29. Upon information and belief Markarian terminated operations of the business so as to destroy evidence of fraud and incur damages to be able to file a lawsuit against Loo.

30. Loo has since notified both the California State Board of Pharmacy and Medi-Cal about the fraud that he has discovered.

## FIRST CAUSE OF ACTION

### (Fraud against Markarian)

31. Cross-Complainant, Loo, hereby repeats and realleges Paragraphs 1 through 30, inclusive and incorporates same herewith by reference as though fully set forth herein.

32. Cross-Defendant, Markarian, represented to Loo that the Pharmacy was a legitimate business and the financials provided to Loo during his due diligence were true, accurate and based on legitimate orders by customers.

33. The representations made by Markarian were, in fact, false since the majority of the transactions reflected in the financials resulted from fraudulent billing practices.

34. When Markarian made these representations, he knew them to be false and made these representations with the intention to deceive and defraud Loo and induce Loo to act in reliance on these representations in the manner described herein, or with the expectation that Loo would so act.

35. Loo, at the time these representations were made by Markarian and at the time Loo took the actions herein alleged, was ignorant of the falsity of Markarian's representations and believed them to be true. In reliance on these representations, Loo was induced to, and did, agree to acquire

- 5 -

CROSS-COMPLAINT

a 49% interest in the Pharmacy and to act as a PIC.

36. Had Loo known the actual facts, he would not have taken such action and his reliance on the said representation was justified.

37. As a proximate result thereof, Loo has been damaged in an amount to be proven at trial but not less than the jurisdictional limit of this court.

38. The aforementioned conduct was an intentional misrepresentation, deceit and/or concealment of material facts known to Cross-Defendants, with the intention on the part of Cross-Defendants of thereby depriving Cross-Complainant of property, legal rights or otherwise causing injury and was despicable conduct that subjected Cross-Complainant to cruel and unjust hardship and conscious disregard of Cross-Complainant's rights, so as to justify an award of exemplary and punitive damages.

## SECOND CAUSE OF ACTION

### (Conspiracy to Commit Fraud against Markarian and Soukazian)

39. Cross-Complainant, Loo, hereby repeats and realleges Paragraphs 1 through 38, inclusive and incorporates same herewith by reference as though fully set forth herein.

40. Loo is informed and believes that Markarian and Soukazian planned to defraud Loo by making false representations and assurances to Loo regarding the Pharmacy's billing practices.

41. Whenever Loo would inquire about various billings in the Pharmacy both Markarian and Soukazian assured him that everything was correct and proper.

42. Loo is informed and believes that Markarian and Soukazian made the above representations to Loo, knowing that they were false and did not correct Loo's impression; instead, Markarian and Soukazian intentionally concealed the material fact that they had been using fraudulent billing practices in the Pharmacy for years.

43. Loo is informed and believes that Markarian and Soukazian concealed the material fact of fraudulent billing practices in furtherance of the common goal agreed upon and shared by Markarian and Soukazian.

44. Loo could not have known, nor did he have any reason to suspect that the representations and assurances made by Markarian and Soukazian were false and had therefore justifiably relied on

- 6 -
CROSS-COMPLAINT

those representations.

45. Loo was harmed by the actions of the Cross-Defendants in an amount to proven at trial.

46. Loo is informed and believes that Cross-Defendants agreed to defraud Loo with the goal of inducing Loo to enter into the Agreement and continue working at the Pharmacy as the PIC. The aforementioned conduct was an intentional misrepresentation, deceit and/or concealment of material facts known to Cross-Defendants, with the intention on the part of Cross-Defendants of thereby depriving Cross-Complainant of property, legal rights or otherwise causing injury and was despicable conduct that subjected Cross-Complainant to cruel and unjust hardship and conscious disregard of Cross-Complainant's rights, so as to justify an award of exemplary and punitive damages.

### THIRD CAUSE OF ACTION

(Breach of the Operating Agreement against Markarian)

47. Cross-Complainant, Loo, hereby repeats and realleges Paragraphs 1 through 46, inclusive and incorporates same herewith by reference as though fully set forth herein.

48. Cross-Complainant, Loo, and Cross-Defendant, Markarian, entered into the Operating Agreement as detailed herein above.

49. Cross-Complainant has performed all of his obligations under the Agreement, or was excused from doing so.

50. Cross-Defendants, and each of them, breached the Agreement by failing to give Loo 100% authority to manage and control the Pharmacy including medication billings and financials.

51. As a result of the said breach Cross-Complainant has been damaged in an amount to be proven at trial.

### FOURTH CAUSE OF ACTION

(Trade Libel against Markarian)

52. Cross-Complainant, Loo, hereby repeats and realleges Paragraphs 1 through 51, inclusive and incorporates same herewith by reference as though fully set forth herein.

53. Cross-Complainant is informed and believes, and based thereon alleges, that Cross-Defendants have made false and disparaging statements about Cross-Complainant to various

- 7 -

CROSS-COMPLAINT

third parties, including statements alleging that Cross-Complainant Loo has been committing fraud. Specifically, including but not limited to, Chase Bank so as to oust Loo from the Pharmacy's business bank account. Please see Exhibit "F" attached hereto.

54. Cross-Complainant is informed and believes, and based thereon alleges, that Cross-Defendants' statements were intended to, and did in fact, harm Cross-Complainant financially by making Cross-Complainant, Loo, unmarketable to prospective employers.

55. Cross-Defendants' conduct as alleged herein causes and will continue to cause irreparable injury to Cross-Complainant and entitles Cross-Complainant to temporary, preliminary and permanent injunctive relief.

56. As a direct and proximate result of Cross-Defendants' conduct, Cross-Complainant has sustained and will continue to sustain damages, the exact amount of which is difficult to calculate, and presently unknown, but which will be proven at trial in an amount exceeding the jurisdictional minimum of this Court.

57. Cross-Defendants' conduct as set forth above and incorporated herein has been willful, fraudulent, oppressive and malicious, with the express intent to injure Cross-Complainant in in his business. Cross-Complainant is therefore entitled to recover punitive and exemplary damages sufficient to serve as an example and to punish Cross-Defendants.

### FIFTH CAUSE OF ACTION

(Breach of Fiduciary Duty Against Markarian and Soukazian)

58. Cross-Complainant, Loo, hereby repeats and realleges Paragraphs 1 through 57, inclusive and incorporates same herewith by reference as though fully set forth herein.

59. By accepting the appointment as Director, and CEO of the Pharmacy and entering into the Operating Agreement and the Agreement, Cross-Defendant, Markarian owed fiduciary duties, such as duties of loyalty, integrity, candor, and good faith, to Loo as the 49% shareholder of the Pharmacy.

60. By being an employee of the Pharmacy, Cross-Defendant, Soukazian, owed fiduciary duties of loyalty, candor, good faith, and integrity to Loo as the 49% owner of the Pharmacy and

- 8 -
CROSS-COMPLAINT

Soukazian's employer.

61. Cross-Defendants, Markarian and Soukazian, breached the said duties by engaging in the acts and omissions detailed herein, specifically by actively engaging the Pharmacy in fraudulent billing practices.

62. As a direct and proximate result of Markarian's and Soukazian's fiduciary duty breaches, Cross-Complainant, Loo, has been damaged in an amount to be proven at trial, but in no event less than the jurisdictional minimum limit.

## SIXTH CAUSE OF ACTION

### (Breach of the Covenant of Good Faith and Fair Dealing against Markarian)

63. Cross-Complainant, Loo, hereby repeats and realleges Paragraphs 1 through 62, inclusive and incorporates same herewith by reference as though fully set forth herein.

64. On or around November 22, 2017 Loo and Markarian entered into the Agreement.

65. On or around November 22, 2017 Loo and Markarian entered into the Operating Agreement.

66. In each of these contracts there existed and implied the covenant of good faith and fair dealing. California Commercial Code section 1201 (20) defines such a covenant as a duty to exercise honesty in fact and observance of reasonable commercial standards of fair dealing in the trade.

67. Cross-Complainant, Loo, is informed and believes and thereon alleges that wherein Markarian solicited Loo to purchase 49% of the Pharmacy and to work therein as a PIC, all the while knowing that he caused the Pharmacy to engage in fraudulent billing practices and the financials he provided to Loo for his due diligence prior to entering into the Agreement reflected such fraudulent billings, constituted a breach of the covenants of good faith and fair dealing.

68. As a result of the aforementioned actions Cross-Complainant, Loo, has been damaged in an amount to be proven at trial.

## SEVENTH CAUSE OF ACTION

### (Unfair Business Practices Business and Professions Code Section 17200 et seq. against Markarian)

69. Cross-Complainant, Loo, hereby repeats and realleges Paragraphs 1 through 68, inclusive

- 9 -
CROSS-COMPLAINT

and incorporates same herewith by reference as though fully set forth herein.

70. Cross-Complainant is informed and believes and thereon alleges that Cross-Defendants, and each of them, have engaged in billing fraud so as to increase the profits of the Pharmacy and obtain personal gain.

71. Cross-Complainant is informed and believes and thereon alleges that Cross-Defendants, and each of them, committed these acts for their personal benefit and without Cross-Complainant's knowledge.

72. Cross-Complainant is informed and believes and thereon alleges that Cross-Defendants, and each of them, engaged in unfair and fraudulent business practices by virtue of the acts described herein above.

73. By reason of Cross-Defendants' fraudulent, deceptive, unfair, and otherwise wrongful conduct as herein alleged, Cross-Defendants, and each of them, have violated California Business and Professions Code section 17200 et seq.

74. By reason of the foregoing, Cross-Complainant suffered and continues to suffer damages in an amount to be proven at trial.

## EIGHTH CAUSE OF ACTION

### (Declaratory Relief against Markarian)

75. Cross-Complainant, Loo, hereby repeats and realleges Paragraphs 1 through 74, inclusive and incorporates same herewith by reference as though fully set forth herein.

76. An actual controversy has arisen and now exists between Markarian and Loo concerning their respective rights and duties in that Markarian contends that the Agreement remains in effect and Loo owes Markarian the balance of $160,000, whereas Loo disputes these contentions and contends that the agreement is voidable as a result of being entered into based on fraudulent inducement.

77. Loo desires a judicial determination of the parties' rights and duties as per the Agreement, and a declaration as to whether this Agreement is voidable.

78. A judicial declaration is necessary and appropriate at this time under the circumstances in order that Loo may ascertain his rights and duties under said Agreement.

CROSS-COMPLAINT

79. Loo will be financially burdened by performance of a viable agreement or by performance of an agreement that was entered into due to fraudulent inducement.

## NINTH CAUSE OF ACTION

(Breach of Express Indemnity against Markarian)

80. Cross-Complainant, Loo, hereby repeats and realleges Paragraphs 1 through 79, inclusive and incorporates same herewith by reference as though fully set forth herein.

81. The Agreement entered into between Loo and Markarian, contained an express indemnity provision which read as follows: *"Transferor shall defend and hold Transferee harmless from and against and in respect of all claims, demands, losses, costs, expenses, obligations, liabilities, damages, recoveries and deficiencies, including interest, penalties and reasonable attorney's fees ("damages") that he shall incur or suffer which arise from, or relate to the operation of the Business prior to January 1, 2018 or from any material breach, or failure by Transferor to perform any of Transferor's covenants or agreements in this Agreement, or if any of the representations and warranties in this Agreement or in any schedule, certificate, exhibit, or other instrument furnished or to be furnished to Transferee under this Agreement is false."*

82. Through Loo's own review of the Pharmacy's billing practices, as detailed herein above, it has become clear that much of the information provided by Markarian to Loo in connection with the Agreement had been based on fraudulent billing practices and was therefore false.

83. Upon information and belief, is it Markarian's duty to defend and hold Loo harmless from any liabilities arising out of the false information provided and the Agreement.

84. Upon information and belief Loo has tendered this indemnity to Markarian and Markarian has failed and refused to indemnify and hold Loo harmless pursuant to the terms of this express indemnity provision, Markarian therefore has breached the indemnity provision.

85. Loo demands that Markarian indemnify and hold Loo harmless against claims, costs and liabilities of any kind arising out of the Agreement and/or the operations of the Pharmacy, including attorney's fees and costs of suit.

- 11 -

86. As a direct and proximate result of this breach, Loo has been damaged in an amount to be proven at trial, and is entitled to be held harmless, indemnified, and reimbursed by Markarian for same.

## PRAYER FOR RELIEF

WHEREFORE, Cross-Complainant prays for judgement against Cross-Defendants as follows:

1. For general damages according to proof;

2. For special damages according to proof;

3. For attorney's fees;

4. For punitive damages;

5. For declaratory relief;

6. For costs of suit herein;

7. For any such other relief as the Court may deem just and proper.

Respectfully submitted,

DATED: November 12, 2018

**SHENON LAW GROUP**

By_____

Natela Shenon
Arman Matevosyan
Attorneys for Defendant & Cross-Complainant

- 12 -
CROSS-COMPLAINT

**EXHIBIT A**

# EXHIBIT A

## STOCK TRANSFER AGREEMENT

This Stock Transfer Agreement ("Agreement") is entered into as of _November 22,_ 2017 by and between SERJ SOUKAZ MARKARIAN ("Transferor") and MAUNG YE HTUT LOO ("Transferee"). Transferee and Transferor may collectively be referred to as the "Parties."

WHEREAS, Transferor is the record owner and holder of shares of the common stock of Glenoaks Rx Inc. DBA: Verdugo Care Pharmacy PHY 54451 (the "Company"), a California Corporation; and

WHEREAS, the Parties desire to enter into this Agreement pursuant to which Transferee will transfer from Transferor shares of common stock of the Company.

NOW, THEREFORE, in consideration for the promises set forth in this Agreement, the Parties agree as follows:

1) **PURCHASE AND SALE**: Subject to the terms and conditions set forth in this Agreement, Transferor hereby agrees to sell, transfer and convey to the Transferee 24,500 shares of common stock of the Company (the "Stock").

2) **TOTAL PURCHASE PRICE**: The total purchase price to be paid by Transferee to Transferor for the Stock shall be the sum of $315,000.00 (Three Hundred and Fifteen Thousand Dollars).

3) **PAYMENT OF PURCHASE PRICE**: The total purchase price specified in Paragraph 2 of this Agreement shall be payable by Transferee to Transferor as follows:
   a) Transferee shall deposit the cash sum of Five Thousand Dollard ($5,000.00) into Escrow ("the Deposit") upon the opening thereof, which shall be not more than five (5) business days following execution of this Agreement by Transferee and Transferor. This deposit is refundable to the Transferee in the event the Board of Pharmacy does not approve the Change of Permit.
   b) Transferee shall execute a Promissory Note in the sum of $310,000.00, which terms are part of this purchase agreement and attached hereto as Exhibit 1.

4) **CONTROL OF PERMIT**: Transferee ownership interest in the corporation will not provide the Transferee with any controlling interest in the Corporation's pharmacy license.

5) **ESCROW**: The Parties shall open an escrow ("Escrow") at Concierge Escrow, located at 12631 E Imperial Hwy A-215, Santa Fe Springs, CA 90670 ("Escrow Agent"). Escrow Agent shall be instructed to prepare escrow instructions in accordance with this Agreement, including the Escrow Agent's standard terms and conditions for escrows, and Transferor and Transferee shall promptly execute the escrow instructions. Transferor and Transferee shall share equally in the Escrow fees, plus charges of the Escrow Agent.

6) **REPRESENTATIONS AND WARRANTIES OF TRANSFEROR**: Transferor hereby warrants and represents that:
   a) <u>Restrictions on Stock</u>. The Transferor is not a party to any agreements that create rights or obligations in the Stock relating to any third party including voting or stockholder agreements. The Transferor is the lawful owner of the Stock, free and clear of any encumbrances, security interests or liens of any kind and has full power and authority to sell and transfer the Stock as contemplated in this Agreement.
   b) <u>Organization and Standing</u>. To the Transferor's knowledge, the Company is duly organized, validly existing and in good standing under the laws of the State of California and has full power and authority to own and operate its property and assets and to carry on its business as presently conducted.
   c) <u>Indemnity Agreement by Transferor</u>. Transferor shall defend and hold Transferee harmless from and against and in respect of all claims, demands, losses, costs, expenses, obligations, liabilities, damages, recoveries and deficiencies, including interest, penalties and reasonable attorney's fees ("damages") that he shall incur or suffer which arise from, or relate to the operation of the Business prior to January 1, 2018, or from any material breach, or failure by Transferor to perform any of Transferor's covenants or agreements in this Agreement, or if any of the representations and warranties in this Agreement or in any schedule, certificate, exhibit or other instrument furnished or to be furnished to Transferee under this Agreement is false.
   d) <u>Payment of Creditors</u>: Transferor agrees to payoff the business line of credit, account ending in 7207 and/or any other business related debts prior to January 1, 2018.
   e) <u>Change of Permit Form</u>: Transferor agrees to submit to the California Board of Pharmacy, within 30 days of signing this agreement a Change of Permit form to notify the Board of Pharmacy a change in stock for PHY 54451.

7) **RIGHT OF FIRST REFUSAL**: Each time a Holder proposes to transfer (or is required by operation of law or other involuntary transfer) any or all of the Shares standing in such Holder's name or owned by him or her during the term of this Agreement, such Holder shall first offer such Shares to the Company in accordance with the following provisions:
   a) Such Holder shall deliver a written notice (a "Notice") to the Company stating (A) such Holder's bona fide intention to Transfer such Shares, (B) the name and the address of the proposed transferee, (C) the number of Shares to be transferred, and (D) the purchase price per Share and terms of payment for which the Holder proposes to Transfer such Shares.
   b) Within 90 days after receipt of the Notice, the Company or its designee shall have the right to purchase or obtain such Shares, upon the price and terms of payment designated in the Notice. If the Notice provides for the payment of non-cash consideration, the Company at its option may pay the consideration

in cash equal to the Company's good faith estimate of the present fair market value of the noncash consideration offered.

c) If the Company or its designee elects not to purchase or obtain all the Shares designated in the selling Holder's Notice, then the Holder may Transfer the Shares referred to in the Notice to the proposed transferee, providing such Transfer (A) is completed within 30 days after the expiration of the Company's right to purchase or obtain such Shares, (B) is made at the price and terms designated in the Notice, and (C) the proposed Transferee agrees to be bound by the terms and provisions of this Agreement and to become a party of this Agreement immediately upon receipt of such Shares. If such Shares are not so transferred, the Selling Holder must give notice in accordance with this paragraph prior to any other or subsequent Transfer of such Shares.

d) A Holder may not transfer any Shares to a competitor of the Company, or to any shareholder, partner or other beneficial holder of an equity ownership interest in a competitor, other then pursuant to a merger.

8) **COVENANT NOT TO COMPETE**: Transferor and Transferee Seller hereby agrees that during the lifetime of this Agreement, and for a period of five (5) years from and after the sale of Transferor or Transferee's Shares, either in full or in part, neither Transferor or Transferee will directly or indirectly own, operate, control or participate in the ownership, operation or control of a pharmacy business which competes in any manner with the ownership interest of the Business being sold within a twenty-five (25) mile radius of the Business. Transferor or Transferee acknowledges that the remedy at law for the breach of this covenant not to compete is inadequate, and, therefore, non-selling party shall be entitled to equitable relief in addition to any other relief to which non-selling party may be entitled.

9) **SEVERABILITY**: If any part or parts of this Agreement shall be held unenforceable for any reason, the remainder of this Agreement shall continue in full force and effect. If any provision of this Agreement is deemed invalid or unenforceable by any court of competent jurisdiction, and if limiting such provision would make the provision valid, then such provision shall be deemed to be construed as so limited.

10) **BINDING EFFECT**: The covenants and conditions contained in this Agreement shall apply to and bind the parties and the heirs, legal representatives, successors and permitted assigns of the Parties.

11) **BROKER'S FEES**: The Parties represent that there has been no act in connection with the transactions contemplated in this Agreement that would give rise to a valid claim against either party for a broker's fee, finder's fee or other similar payment.

12) **ENTIRE AGREEMENT**: This Agreement constitutes the entire agreement between the Parties and supersedes any prior understanding or representation of any kind preceding the date of this Agreement. There are no other promises, conditions, understandings or other agreements, whether oral or written, relating to the subject matter of this Agreement. This Agreement may be modified in writing and must be signed by both the Transferor and Transferee.

13) **GOVERNING LAW**: This Agreement shall be governed by and construed in accordance with the laws of the State of California.

14) **WAIVER**: The failure of either party to enforce any provisions of this Agreement shall not be deemed a waiver or limitation of that party's right to subsequently enforce and compel strict compliance with every provision of this Agreement.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed the day and year first above written.

TRANSFEROR:

SERJ SOUKAZ MARKARIAN

TRANSFEREE:

MAUNG YE HTUT LOO

## CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

CIVIL CODE § 1189

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of _Los Angeles_____ )

On _November 22, 2011_ before me, _Kayla Ann Villaescusa, Notary Public_
    Date                                  Here Insert Name and Title of the Officer

personally appeared _Serj Soukaz Markarian and_
_Maung Ye Htut Loo_____
                               Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

KAYLA ANN VILLAESCUSA
Notary Public - California
Orange County
Commission # 2165547
My Comm. Expires Sep 23, 2020

Signature _____
                      Signature of Notary Public

_Place Notary Seal Above_

──────────────────────── OPTIONAL ────────────────────────

_Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document._

**Description of Attached Document**

Title or Type of Document: _____ Document Date: _____

Number of Pages: _____ Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Individual    ☐ Attorney in Fact
☐ Trustee     ☐ Guardian or Conservator
☐ Other: _____
Signer Is Representing: _____

Signer's Name: _____
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Individual    ☐ Attorney in Fact
☐ Trustee     ☐ Guardian or Conservator
☐ Other: _____
Signer Is Representing: _____

©2014 National Notary Association • www.NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)   Item #5907



NUMBER
**3**

INCORPORATED UNDER THE LAWS OF THE STATE OF CALIFORNIA
APRIL 12, 2006

SHARES

# GLENOAKS RX, INC.

AUTHORIZED: 50,000 SHARES COMMON STOCK

THIS CORPORATION IS A CLOSE CORPORATION. THE NUMBER OF HOLDERS OF RECORD OF ITS SHARES OF ALL CLASSES CANNOT EXCEED _____. ANY ATTEMPTED VOLUNTARY INTER VIVOS TRANSFER WHICH WOULD VIOLATE THIS REQUIREMENT IS VOID. REFER TO THE ARTICLES, BYLAWS AND ANY AGREEMENTS ON FILE WITH THE SECRETARY OF THE CORPORATION FOR FURTHER RESTRICTIONS.

**This Certifies that** Maung Ye Htut Loo *is the*

*registered holder of* 24,500 *Shares*

*of the above named Corporation transferable only on the books of the Corporation by the holder hereof in person or by Attorney upon surrender of this Certificate properly endorsed.*

**In Witness Whereof,** *the said Corporation has caused this Certificate to be signed by its duly authorized officers and its Corporate Seal to be hereunto affixed*

*this* 22nd *day of* November *A.D.* 2017

_____ SECRETARY

_____ PRESIDENT

©GOES DE2 X211148
All Rights Reserved

ATTORNEYS CORPORATION SERVICE, INC., BURBANK, CA

**EXHIBIT B**

**Glenoaks Rx, INC**
**DBA: Verdugo Care Pharmacy (PHY 54451)**
**8908 Glenoaks Blvd**
**Sun Valley, CA 91352**

# Verdugo Care Pharmacy Operating Agreement

Upon signing Stock Transfer Agreement, SERJ SOUKAZ MARKARIAN and MAUNG YE HTUT LOO have entered into following Partnership and operation Agreement of Verdugo Care Pharmacy, with the exception of paragraph 2 below, all terms hereby shall only apply after the compensated transaction of sales of stocks between SERJ SOUKAZ MARKARIAN and MAUNG YE HTUT LOO are completed.

1. Partnership will be annulled, all finances will be refunded and Stock Certificate will be transferred back or annulled.   If the board of pharmacy revokes the pharmacy permit for any past misconduct by either partner.

2. On or before January 1st 2018, Maung Ye Htut Loo will begin working as the pharmacist in charge with pharmacist wage of $65/ hour, subject to fair annual increases as determined by market conditions Not to exceed 3%. Both parties agree that Maung Ye Htut Loo will continue working as the pharmacist in charge for at least six months regardless of Change of Permit approval by the board of pharmacy.

3. The Pharmacy Locks, Keys and Alarm codes will be changed at the start of the partnership on or before January 1st, 2018. Only Licensed pharmacists will have keys and enter the pharmacy per board of pharmacy laws.

4. Maung Ye Htut Loo will have 100% authority in Managing the pharmacy including but not limited to Payroll management, scheduling employees and hiring and termination of employees. Thus, Maung Ye Htut Loo will be appointed Chief Financial Officer and Secretary in Glenoaks Rx, INC.

5. The net profit of the pharmacy will be distributed to both partners equally. Once the Change of Permit PHY-5455 has been fully approved only. Depending on the financial performance of the business, Serj and Maung will equally withdraw cash of $4000-

**Glenoaks Rx, INC**
**DBA: Verdugo Care Pharmacy (PHY 54451)**
**8908 Glenoaks Blvd**
**Sun Valley, CA 91352**

monthly from the business after paying all the expenses. The amount can be changed based on the net profit of the business and agreed by both partners.

6. Serj Soukaz Markarian and Maung Ye Htut Loo will equally contribute when pharmacy is in need of cash.

7. Both Serj Soukaz Markarian and Maung Ye Htut Loo will not open any business credit card or credit line without each other's consent.

8. Any Business-related expenses need to be agreed by both Serj and Maung.

The Covenants and conditions contained in this agreement shall apply to and bind the parties and heirs, legal representatives, successors and permitted assigns of the Parties.


SERJ SOUKAZ MARKARIAN                    MAUNG YE HTUT LOO

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT**                CIVIL CODE § 1189

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California                     )
County of Los Angeles                   )

On November 22, 2017 before me, Kayla Ann Villaescusa, Notary Public

<span style="font-size:smaller">Date                                    Here Insert Name and Title of the Officer</span>

personally appeared Serj Soukaz Markarian and

Maung Ye H tut Loo

<span style="font-size:smaller">Name(s) of Signer(s)</span>

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

KAYLA ANN VILLAESCUSA
Notary Public - California
Orange County
Commission # 2165547
My Comm. Expires Sep 23, 2020

Signature _____

<span style="font-size:smaller">Signature of Notary Public</span>

_Place Notary Seal Above_
──────────────────── **OPTIONAL** ────────────────────
_Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document._

**Description of Attached Document**

Title or Type of Document: _____ Document Date: _____

Number of Pages: _____ Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____          Signer's Name: _____
☐ Corporate Officer — Title(s): _____        ☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited  ☐ General                ☐ Partner — ☐ Limited  ☐ General
☐ Individual        ☐ Attorney in Fact           ☐ Individual        ☐ Attorney in Fact
☐ Trustee           ☐ Guardian or Conservator    ☐ Trustee           ☐ Guardian or Conservator
☐ Other: _____                 ☐ Other: _____
Signer Is Representing: _____          Signer Is Representing: _____

©2014 National Notary Association • www.NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)    Item #5907

# RECEIPT NO.  53

Certified to be true and exact
copy of the original
Concierge Escrow Service, Inc

## Concierge Escrow Service, Inc.
### 12631 E Imperial Highway Building "A", Suite 215
### Santa Fe Springs, CA 90670
### (949) 954-6571

| | | | |
|---|---|---|---|
| DATE: 11/22/2017 | | ESCROW NO | 5116-LA |
| TIME: 3:15PM | | ESCROW OFFICER: Letty Ascencio | |

*Received From:*  **Htut Loo, Maung Ye**

THE SUM OF  *FIVE THOUSAND AND NO/100 DOLLARS*
*( $5,000.00 )*
RECEIVED FOR:  Earnest Money
RECEIVED BY:  Letty Ascencio
COMMENTS:

> Received After Hours

Buyer:    Maung Ye Htut Loo
Seller:   Glenoaks Rx Inc. DBA: Verdugo Care Pharmacy PHY 54451, A California Corporation
Property:    8908 Glenoaks Blvd, Sun Valley, CA 91352

**Detail**

| Tender Type | Check Number | ABA Number | | Amount |
|---|---|---|---|---|
| Check | 3377 | 19-7076/3250 | $ | 5,000.00 |
| Total | | | $ | 5,000.00 |

# RECEIPT NO.     55

Certified to be true and exact
copy of the original
Concierge Escrow Service, Inc.

Concierge Escrow Service, Inc.
12631 E Imperial Highway Building "A", Suite 215
Santa Fe Springs, CA 90670
(949) 954-6571

| | |
|---|---|
| DATE    11/22/2017 | ESCROW NO.    5116-LA |
| TIME :    3 16PM | ESCROW OFFICER  Letty Ascencio |

*Received From:*  **Glenoaks Rx Inc. DBA: Verdugo Care Pharmacy PHY 54451, A**

THE SUM OF  *EIGHT HUNDRED FIFTY AND NO/100  DOLLARS*
*( $850.00 )*
RECEIVED FOR:    Additional
RECEIVED BY:     Letty Ascencio
COMMENTS:

Received After Hours

Buyer:    Maung Ye Htut Loo
Seller:    Glenoaks Rx Inc. DBA: Verdugo Care Pharmacy PHY 54451, A California Corporation
Property:    8908 Glenoaks Blvd, Sun Valley, CA 91352

Detail

| Tender Type | Check Number | ABA Number | | Amount |
|---|---|---|---|---|
| Check | 3101 | 16-24/1220 | $ | 850.00 |
| Total | | | $ | 850.00 |

3101
16-24/1220

**VERDUGO CARE PHARMACY**
1309 E CHEVY CHASE DR
GLENDALE CA 91205

Date _____

Pay to the
Order of _____

_____ Dollars

WELLS FARGO BANK, N.A.
BURBANK CA 91502

FOR _____

⑈003101⑈ ⑈122002478⑈ 7216507207⑈

RECEIPT NO.        54

Certified to be true and exact
copy of the original
Concierge Escrow Service, Inc.

Concierge Escrow Service, Inc.
12631 E. Imperial Highway Building "A", Suite 215
Santa Fe Springs, CA 90670
(949) 954-6571

| DATE. 11/22/2017 | ESCROW NO. 5116-LA |
| TIME  3 15PM | ESCROW OFFICER. Letty Ascencio |

*Received From:*  **Htut Loo, Maung Ye**

THE SUM OF. *EIGHT HUNDRED FIFTY AND NO/100  DOLLARS*

**( $850.00 )**
RECEIVED FOR:   Additional
RECEIVED BY:   Letty Ascencio
COMMENTS:

Received After Hours

Buyer:    Maung Ye Htut Loo
Seller:    Glenoaks Rx Inc. DBA: Verdugo Care Pharmacy PHY 54451, A California Corporation
Property:    8908 Glenoaks Blvd, Sun Valley, CA 91352

| Detail | | | | Amount |
|---|---|---|---|---|
| Tender Type | Check Number | ABA Number | | |
| Check | 3376 | 19-7076/3250 | $ | 850.00 |
| | | | $ | 850.00 |
| Total | | | | |

**EXHIBIT C**

# EXHIBIT C























**EXHIBIT D**

**EXHIBIT D**

August 22nd 2018

## Attestation of Insurance Billing

Per instruction of Verdugo Care Pharmacy owner Serj S. Markarian and Arevik Soukazian, I Alfred Cheraghi have been billing prescriptions to insurances but not sending medications to the patient. I realize after speaking with Maung Ye Htut Loo on 08/18/2018 that billing insurance without dispensing medication is an insurance fraud and I will no longer be doing such activities.

By signing below, I am certifying that above statement is true and signing at my own will.

I Alfred read, write English and understood above statement

*I Alfred read write English and understood above statement*

Alfred Cheraghi

EXHIBIT E

EXHIBIT E

**Wire Transfer Outgoing Request** **CHASE ○**

## Wire Transfer Sender Information

| Sender Name: | | | | |
|---|---|---|---|---|
| MAUNG YE HTUT LOO | | | | |
| Account Name: | | Street Address: | | |
| MAUNG YE HTUT LOO | | 628 HARDING AVE | | |

| City: | State: | Zip: | Country: | Daytime Phone: |
|---|---|---|---|---|
| MONTEREY PARK | CA | 91754-3220 | USA | 415-694-2492 |

| Primary ID Type: | ID Issuer: | ID Number: | ID Issue Date: | ID Exp: |
|---|---|---|---|---|
| Driver's License | CA | b9592550 | 12/04/2017 | 12/07/2020 |

| Secondary ID Type: | ID Issuer: | ID Number: | ID Issue Date: | ID Exp: |
|---|---|---|---|---|
| | | | | |

Comments:

## Wire Transfer Information

| Request Date: | Request time: | Effective date: | Wire Type: |
|---|---|---|---|
| 09/24/2018 | 06:11:22PM Eastern time | 09/25/2018 | Domestic |

| Debit Account #: | Debit Account Type: | Available balance: | Wire Amount (US dollars): |
|---|---|---|---|
| 3713329770 | CHASE SAVINGS | $137,500.56 | $92,308.57 |

| Qualifying Account #: | Qualifying Account Type: | Source of funds | Wire Fee: |
|---|---|---|---|
| | | Savings | $35.00 |

| Currency type to be sent: | Exchange rate: | Foreign currency amount | Amount to Collect (USD): |
|---|---|---|---|
| US Dollars | N/A | N/A | $92,343.57 |

| FX Contract Number: | | | |
|---|---|---|---|
| | | | |

## Recipient Account Information

| Account Name: | | | | |
|---|---|---|---|---|
| H D Smith, LLC | | | | |

| Street Address: | Account Number: | | | |
|---|---|---|---|---|
| | 1019926 | | | |
| | City: | State: | Zip: | Country: |
| | | | | |

Text to Recipient:
Account Number: 1000007183 Per Karen Watson, account is paid in full

## Receiving Bank Information

| Bank Name: | | | | |
|---|---|---|---|---|
| JPMorgan Chase Bank, National Association | | | | |

| Street Address: | Bank ABA/SWIFT Code: | | | |
|---|---|---|---|---|
| 1 E OLD STATE CAPITOL PLZ | 071000013 | | | |
| | City: | State: | Zip: | Country: |
| | SPRINGFIELD | IL | 62701 | USA |

| Intermediary Bank Name: | | | | |
|---|---|---|---|---|
| | | | | |

| Street Address: | Intermediary Bank ABA: | | | |
|---|---|---|---|---|
| | | | | |
| | City: | State: | Zip: | Country: |
| | | | | |

Text to Receiving Bank:

 N15220-CS WTA (05/18) Page 1 of 4

EXHIBIT F

# EXHIBIT F

## Customer Summary

**Customer:** GLENOAKS RX, INC. DBA VERDUGO CARE
PHARM...

Non Individual - Corporation - Type S

| | | |
|---|---|---|
| **Address** | **Best # to Call** | **LOB Indicator** |
| 8908 GLENOAKS BLVD | 818-662-0111 (Primary) | Retail Group |
| SUN VALLEY, CA 91352-2037 | More Phones | |
| United States/US territories | | **Segment** |
| | | Small Business |
| **SSN/EIN** | **Business Platinum Service** | **Cost Center** |
| XX-XXX7191 | No | 741629 |
| **Business Established Date** | **Assigned Banker & Branch** | **ECI** |
| 04/12/2006 | No Assigned Banker | 0416146247 |
| | Vineland | |

### Comments

| Valid From | Valid Until | Type | Comment Text |
|---|---|---|---|
| 09/11/2018 | 03/11/2019 | Alert | Due to fraud, any withdrawal or transaction done by Maung Ye Htut Loo has to first be approved by primary partner Serj S. Markarian. |

**Additional Comments: Alert: N    General: N    Profile: N    Other: N**

### Accounts

| Account # | Type | Status | Relationship | Current Balance | Bank |
|---|---|---|---|---|---|
| XXXXX8936 | Total Bus Chk | GoTo Open | Sole Owner | $35,160.72 | CA/NV |
| XXXXXXXXXXXX3791 | ATM/Debit Card | Active | Sole Owner | Not Applicable | CA/NV |

### Closed Accounts

Show closed accounts?
○ Yes   ● No

https://ca-bell1-phase3.jpmchase.net/ca/customerSummary-flow?execution=e8s1                9/17/2018

# EXHIBIT "2"

**FILED**
Superior Court of California
County of Los Angeles

**07/16/2021**

Sherri R. Carter, Executive Officer / Clerk of Court

By: _____ R. Navarro _____ Deputy

MARCARIAN LAW FIRM
A Professional Law Corporation
ARMOND MARCARIAN, ESQ. (CBN 213883)
armond@marcarianlaw.us
MARC L. McCULLOCH, ESQ. (CBN 252526)
marc@marcarianlaw.us
KRISTINA N. MARKARIAN (CBN 330144)
kristina@marcarianlaw.us
21650 OXNARD STREET, SUITE 1980
WOODLAND HILLS, CALIFORNIA 91367
TELEPHONE: (818) 995-8787
FACSIMILE: (818) 975-9999

Attorneys for Defendant and Cross-Complainant
MAUNG YE HTUT LOO aka MAUNG YE HTUT aka BRIAN LOO

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF LOS ANGELES – CENTRAL DISTRICT**

| | |
|---|---|
| GLENOAKS RX, INC. dba VERDUGO CARE PHARMACY PHY 54451; SERJ SOUKAZ MARKARIAN,<br><br>Plaintiff,<br><br>vs.<br><br>MAUNG YE HTUT LOO aka MAUNG YE HTUT aka BRIAN LOO; and DOES 1 through 10, inclusive,<br><br>Defendants.<br>_____<br>MAUNG YE HTUT LOO, an individual;<br><br>Cross-Complainant;<br><br>vs.<br><br>SERJ SOUKAZ MARKARIAN, an individual; AREVIK SOUKAZIAN, an individual; and ROES 1 through 10, inclusive.<br><br>Cross-Defendants. | Case No.: BC721862<br><br>[Assigned to Honorable Michael P. Linfield – Dept. 34]<br><br><br>~~[PROPOSED]~~ JUDGMENT<br><br><br><br>Complaint Filed:  September 17, 2018<br>Trial Date:  June 15, 2021 |

1

_____
[PROPOSED] JUDGMENT

**Exhibit "2"**

**MARCARIAN LAW FIRM**
*Power Equalizers*

### JUDGMENT

This action came on regularly for trial on June 15, 2021 in Department 34 of the Los Angeles Superior Court, Central District, the Honorable Michael P. Linfield, Judge presiding. Plaintiff and Cross-Defendant Serj Soukaz Markarian and plaintiff Glenoaks Rx, Inc. appeared through their attorney Ara Aroustamian.  Defendant and Cross-Complainant Maung Ye Htut Loo ("Mr. Loo") appeared through his attorneys Armond Marcarian and Kristina Markarian of the Marcarian Law Firm, P.C.

Judge Linfield (the "Court") sat as the trier of fact and the law.  Witnesses were sworn and testified either in person or by video appearance.  Both sides having rested and the Court having heard all the evidence, the Court found on June 18, 2021 as follows:

FOR THE DEFENDANT (Mr. Loo) on all the Complaint causes of action; and

FOR THE CROSS-COMPLAINANT (Mr. Loo) on the Cross-Complaint causes of action for Fraud, Breach of Fiduciary Duty, and Breach of the Covenant of Good Faith and Fair Dealing; and

FOR THE CROSS-DEFENDANT (Serj Soukaz Markarian) on the Cross-Complaint causes of action for Breach of Operating Agreement, and Breach of Warranty.

The Court further found, by clear and convincing evidence, that Serj Soukaz Markarian acted with malice, fraud and, or, oppression when he committed fraud and breach of fiduciary duty.

**NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED** that the Plaintiffs and Cross-Defendant, and each of them, have nothing, and Defendant and Cross-Complainant is the prevailing party and shall have and, or, recover the following:

1) Rescission of the Stock Transfer Agreement on the date of entry of this judgment; and

2) Immediately upon rescission of the Stock Transfer Agreement, Defendant (Mr. Loo) shall return his 49 percent (49%) interest in Glenoaks Rx, Inc.; and

3) Immediately upon rescission of the Stock Transfer Agreement, the Plaintiffs, jointly and severally, shall refund the principal sum of $155,000 (one hundred fifty-five thousand dollars) that Mr. Loo paid to acquire his 49 percent (49%) interest in

2

Glenoaks Rx, Inc., less an offset of $45,177.49 that Mr. Loo is currently holding, for a net refund payment of $109,822.51 to Mr. Loo; and

4) Serj Soukaz Markarian shall pay punitive damages in the amount of $10,000 (ten thousand dollars) to Mr. Loo; and

5) Plaintiffs, jointly and severally, shall pay costs and disbursements pursuant to Memorandum of Costs; and

6) Attorneys' fees in an amount to be determined by a noticed motion to be heard prior to August 31, 2021;

7) ~~Pre-judgment interest at an equitable rate pursuant to Code of Civil Procedure sections 1689(b)(1) and 1692(b) and *Runyan v. Pacific Air Industries, Inc.* (1970) 2 Cal.3d 304, 316 from the date of filling of the complaint until the date of entry of judgment; and~~

8) Post-judgment interest at the rate of ten percent (10%) per annum from the date of entry of this judgment until paid.

DATED: _____07/16/2021_____        _____
                                         Michael P. Linfield / Judge
                                         HONORABLE MICHAEL P. LINFIELD
                                         Judge of the Superior Court

MARCARIAN LAW FIRM
*Power Equalizers*

3

[PROPOSED] JUDGMENT

# EXHIBIT "3"

FILED
Superior Court of California
County of Los Angeles

02/01/2022

Sherri R. Carter, Executive Officer / Clerk of Court

By: _____ R. Navarro _____ Deputy

MARCARIAN LAW FIRM
A Professional Law Corporation
ARMOND MARCARIAN, ESQ. (CBN 213883)
armond@marcarianlaw.us
MARC L. McCULLOCH, ESQ. (CBN 252526)
marc@marcarianlaw.us
KRISTINA N. MARKARIAN, ESQ. (CBN 330144)
kristina@marcarianlaw.us
21650 OXNARD STREET, SUITE 1980
WOODLAND HILLS, CALIFORNIA 91367
TELEPHONE: (818) 995-8787
FACSIMILE: (818) 975-9999

Attorneys for Defendant and Cross-Complainant
MAUNG YE HTUT LOO aka MAUNG YE HTUT aka BRIAN LOO

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES – CENTRAL DISTRICT

| | |
|---|---|
| GLENOAKS RX, INC. dba VERDUGO CARE PHARMACY PHY 54451; SERJ SOUKAZ MARKARIAN,<br><br>Plaintiff,<br><br>vs.<br><br>MAUNG YE HTUT LOO aka MAUNG YE HTUT aka BRIAN LOO; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.: BC721862<br><br>[Assigned to Honorable Michael P. Linfield – Dept. 34]<br><br><br>**[~~PROPOSED~~] REVISED JUDGMENT**<br><br><br>Complaint Filed:  September 17, 2018<br>Trial Date:  June 15, 2021 |
| MAUNG YE HTUT LOO, an individual;<br><br>Cross-Complainant;<br><br>vs.<br><br>SERJ SOUKAZ MARKARIAN, an individual; AREVIK SOUKAZIAN, an individual; and ROES 1 through 10, inclusive.<br><br>Cross-Defendants. | |

1

_____
[PROPOSED] REVISED JUDGMENT

# Exhibit "3"

Electronically Received 12/17/2021 11:51 AM

Electronically Received 12/17/2021 11:51 AM

MARCARIAN LAW FIRM
Power Equalizers

MARCARIAN LAW FIRM
*Power Equalizers*

Having entered a judgment on July 16, 2021 following a bench trial in the case captioned above, a true, correct and conformed copy of the Judgment and the Notice of Entry of Judgment are attached hereto as **Exhibit 1**.

Having entered a judgment awarding costs on December 6, 2021 in the sum of Thirty-Eight Thousand Two Hundred Thirty-One dollars and 98 Cents ($38,231.98) plus post-judgment interest at the rate of ten percent (10%) per annum from the date of entry of judgment until paid, Defendant and Cross-Complainant Maung Ye Htut Loo ("Mr. Loo") seeks judgment against Plaintiffs Glenoaks Rx, Inc. and Serj Soukaz Markarian and Cross-Defendant Serj Soukaz Markarian (collectively "Plaintiffs") for Attorneys' Fees awarded by the Court on November 4, 2021.

## ~~[PROPOSED]~~ REVISED JUDGMENT

Mr. Loo's Motion for Attorneys' Fees came on regularly for hearing on November 4, 2021 in Department 34 of the above-entitled Court. Ara Aroustamian, Esq., of Aroustamian & Associates, appeared via LA Court Connect for Plaintiffs. Armond Marcarian, Esq., of the Marcarian Law Firm, P.C., appeared via LA Court Connect for Mr. Loo. After having reviewed Mr. Loo's Motion for Attorneys' Fees, the memorandum of points and authorities and evidence filed in support thereof, including the declaration of Armond Marcarian, Esq., the opposition and reply papers, Mr. Loo's supplemental brief and the response thereto, and hearing oral arguments made by counsel, the Court adopted its tentative ruling in its entirety.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED:** that the Plaintiffs and Cross-Defendant, and each of them, have nothing, and Mr. Loo, Defendant and Cross-Complainant, is the prevailing party and shall have and, or, recover the following:

1) Rescission of the Stock Transfer Agreement pursuant to the Judgment entered on July 16, 2021; and

2) Immediately upon rescission of the Stock Transfer Agreement, Mr. Loo shall return his 49 percent (49%) interest in Glenoaks Rx, Inc. pursuant to the Judgment entered on July 16, 2021; and

///

2

3) Immediately upon rescission of the Stock Transfer Agreement, the Plaintiffs, jointly and severally, shall refund the principal sum of $155,000 (one hundred fifty-five thousand dollars) that Mr. Loo paid to acquire his 49 percent (49%) interest in Glenoaks Rx, Inc., less an offset of $45,177.49 that Mr. Loo is currently holding, for a net refund payment of $109,822.51 to Mr. Loo pursuant to the Judgment entered on July 16, 2021; and

4) Serj Soukaz Markarian shall pay punitive damages in the amount of $10,000 (ten thousand dollars) to Mr. Loo pursuant to the Judgment entered on July 16, 2021; and

5) Plaintiffs, jointly and severally, shall pay Mr. Loo's costs in the amount of $38,231.98; and

6) Attorneys' fees in the amount of $230,000.00; and

7) Post-judgment interest at the rate of ten percent (10%) per annum from the date of entry of this judgment until paid.

DATED: 02/01/2022

Michael P. Linfield / Judge
HONORABLE MICHAEL P. LINFIELD
Judge of the Superior Court

3

[PROPOSED] REVISED JUDGMENT